IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Ortagus Bennett )<br>        Plaintiff )<br>VS. )<br>Thirteenth Circuit Solicitor Walt Wilkins )<br>        Defendant )<br>        ) | **COMPLAINT** |

Complaining of the Defendant, Plaintiff would show unto this Honorable Court as follows:

### JURISDICTION AND VENUE

1. This is an action for injunctive relief pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

2. Venue is proper in the Greenville District in that the events and conduct complained of herein all occurred in the Greenville District.

### PRELIMINARY STATEMENT/FACTS & PROCEDURAL HISTORY

3. Plaintiff herein, Ortagus Bennet, is currently under indictment for attempted murder and possession of a weapon during a violent crime. In connection with these ongoing criminal proceedings, Plaintiff seeks injunctive relief as set forth herein below in order to interrupt the continuing efforts of the Defendant to effectuate Plaintiff's conviction on currently pending criminal charges by and through ongoing violations of Plaintiff's rights under the US Constitution to due process of law as well as a fair and speedy trial before an impartial jury. Plaintiff is informed and believes that the adjudication of these complaints prior to the adjudication of the charges pending against him is necessary in order to interrupt an established pattern of violation of Plaintiff's rights that will otherwise render a fair trial of the pending charges an impossibility.

4. A summary recount of Plaintiff's history with the 13th Circuit Solicitor's Office while under Defendant's direction is necessary in order to fully set forth the circumstances establishing the grounds for the Plaintiff's current 1983 action seeking injunctive relief:

    Plaintiff's history with 13th Circuit Solicitors office involves Defendant's previous unsuccessful attempts to unfairly prosecute Plaintiff. Specifically, Plaintiff was previously indicted on federal charges alleging involvement in a scheme to traffic heroin.

Agents seized $25,000 of Plaintiff's legitimate business funds in connection with the federal drug charges. Following extensive legal maneuvering, the federal charges against the Plaintiff were eventually dismissed with prejudice due, in part, to the federal government's inability or unwillingness to produce its alleged evidence against the Plaintiff sothat such evidence could be appropriately examined and challenged at trial.

However, following the dismissal of the federal charges, Defendant took up the federal case and attempted to obtain a conviction on the State level despite the obvious lack of evidence of any wrongdoing on the part of the Plaintiff, including but not limited to the same inability and/or unwillingness to produce critical witnesses as resulted in the dismissal of the federal case. Following even more legal maneuvering and monumental resistance by Defendant, the State's case was also dismissed and the seized funds were returned to Plaintiff.

In July of 2019, Plaintiff filed a civil action against several federal DEA agents seeking damages for RICO violations, including allegations that at least one federal DEA agent conspired with the Defendant to have state criminal charges brough against him in

order to delay or prevent the return of his legitimate business proceeds. Plaintiff's federal lawsuit was dismissed by order of United States Magistrate Judge Kevin McDonald for failure to state a claim upon which relief could be granted, in part because the funds previously seized had already been returned to Plaintiff.

5. Plaintiff was arrested on the currently pending charges (which involve a nonfatal shooting of a "bouncer" at a nightclub) in 2017. Notably, however, Plaintiff was not indicted on the charges arising from the incident until after Plaintiff filed the RICO action in July of 2019. Nearly two and one-half years after Plaintiff's arrest on the current charges, but almost immediately after Plaintiff made his *pro se* RICO filing, Defendant caused the Assistant Solicitor for the 13th circuit to present the indictment in the November 2019, term of the Grand Jury and shortly thereafter noticed the case for trial for the January 13, 2020 term of General Sessions court. Plaintiff noted certain irregularities in the presentation of the indictment, including unexplained manual edits of dates indicating when the indictment was obtained, but no action has been taken to rectify or determine the significance of these irregularities. During the same time period, Plaintiff also

underwent compulsory changes in his defense team, despite his objection to the changes in light of the proximity of the trial.

6. Several other issues of concern have arisen within the context of the criminal charges currently pending against Plaintiff, which ultimately led to trial of the matter being continued past the January 2020 term. These issues include the following:

    a. Defendant's repeated and continuing delays in producing <u>Brady</u> motion materials, as well as repeated and currently continuing failure to produce any and all relevant evidence that may tend to Plaintiff's exoneration.

    b. Delaying the process of actually obtaining an indictment (despite Plaintiff having been led to believe an indictment had already been returned), and thereby depriving Plaintiff of his rights to a speedy, in order to prolong the time period during which the Defendant could and did attempt to shore up its case against Plaintiff, including obtaining an altered account of events from the allegedvictim.

    c. Docketing the case for trial on the heels of a true billed indictment during fluctuation in the Plaintiff's representation after a two year delay, which constituted an

abuse of the Solicitor's discretion in controlling the trial docket.

d. Defendant's participation and/or acquiescence in obtaining altered and fundamentally unreliable accounts of the incident from the alleged victim. During a preliminary hearing Officer Jake Walters testified that a line up was not conducted, that the lighting was bad in the parking lot where the incident occurred, that the alleged victim, Mr. Wilson, had not identified Plaintiff as being involved in the incident and did not want to pursue charges, and there had been no additional follow up to determine if Mr. Wilson indicated that he wanted to pursue charges. Officer Walters also stated that Mr. Wilson advised that he had not had any previous interactions with Plaintiff during that night, and also incorrectly stated that Mr. Wilson was shot in the back. Although there were several people in the parking lot, the only statements that were collected were from parties that were involved in the incident, including alleged security guards who were unlicensed, has criminal histories of their own, and had participated in the assault and strong armed robbery perpetrated on Plaintiff by the alleged victim.

e. In February 2020, the alleged victim, who was acting as a

"bouncer" on the night in question, recanted his previous statement that he had not been in contact with the Plaintiff prior to the shooting and instead alleged that he initially struck Plaintiff in the face because Plaintiff didn't move quick enough upon his request. Notably, Defendant delayed providing Plaintiff with the witness' altered statement until a mere two days before the preliminary hearing, even though date for the hearing had been delayed twice in order to allow Defendant time to rectify its prior failures to make full disclosures.

f. The hand gun recovered from the scene was never identified as the weapon that wounded Mr. Wilson.

g. On information and belief, Defendant directed, encouraged, and/or acquiesced in the actions of the Greenville Police Department when, on Friday January 3, 2020, in connection with an unrelated criminal matter, the Greenville Police Department posted on their official Facebook page a post called "Fugitive Friday: Ortagus Demetrice Bennett"

h. This post to their over 50,000 followers was shared 110 times and received 46 comments. Based on this level of

activity the post would reach a conservative estimate of 100,000 people. Nearly 20% of Greenville County's

population.

i. Despite the fact that the Police Department had neither advised the Plaintiff that they were seeking him for questioning in the separate matter nor made him aware that any warrant had been sought or issued in connection with the matter, the Post referred to him as a fugitive from the law and sought the community's assistance with apprehending him.

j. Further, the post indicated that the Plaintiff was guilty of the unrelated charges even though those charges remain pending to date.

k. Despite the fact that the Plaintiff presented himself to the Greenville Police Department within a single day of learning that he was wanted for questioning, the post remained pinned to the top of GPD's Facebook page until Plaintiff's February 10th, 2020 hearing, at which time Judge Stillwell ordered the post removed.

l. On information and belief, the Greenville Police Department, acting with the knowledge, acquiescence, and/or direction of the Defendant, intentionally utilized the post to mischaracterize Plaintiff's prior criminal history, to advise

     the public that he had actually committed an alleged assault, and to give the appearance that he was on the run, all in attempt to make him appear guilty of the currently pending attempted murder charges.

m. The posting was especially egregious because it was posted less than 72 hours prior to the then-scheduled jury selection in Plaintiff's attempted murder case.

n. Further, Plaintiff discovered, through means other than disclosure by the Defendant or the 13th Circuit Solicitor's Office, that Charlie Dayoub, one of the police officers who initially responded to the scene of the alleged attempted murder, and who was viewed on body camera footage from a fellow officer (having intentionally turned off his own body camera) while interacting with evidence at the scene (although his interactions were omitted from the filed police reports), had **been arrested and imprisoned for fabricating evidence against falsely accused African American's** while acting in his capacity as a police officer in Florida. Nonetheless, despite repeated requests made by or on behalf of Plaintiff, the 13th Circuit Solicitors Office to Date refuses to provide

       Plaintiff with complete records of the officer's files during his employment with the Greenville County Police Department, as well as any information the State may possess as to the former officer' records while employed in Florida.

7. As of the date of filing of this 1983 action, a new date has not been set for the Plaintiff's trial as to the pending charges; however, Defendants actions continue to constitute violations of Plaintiff's rights under the United States and South Carolina Constitutions, and to prevent the Plaintiff from obtaining a fair trial before an impartial jury

### FIRST CAUSE OF ACTION – CIVIL RIGHTSVIOLATION PURSUSANT TO 42 USC § 1983

1. All of the allegations set forth hereinabove are reinterated and incorporated herein as though set forth verbatim.

2. Defendant's act of causing or acquiescing to the placing of Plaintiff's image on its Fugitive Friday Facebook Post, stating that was guilty of assaulting the alleged victim, and leaving the post up for nearly month after Plaintiff had presented himself to answer the charges, was intended to and did in fact unfairly and irrevocably taint the potential jury pool available to Plaintiff for trial of any civil or criminal action brought against Plaintiff in connection with not only that action, but also with respect to the matter involving charges of attempted murder charges pending

in Greenville involving the Plaintiff, in violation Plaintiff's rights to a fair trial before an impartial jury under the Sixth Amendment to the United States Constitution, as well as Article I, Section 14 of the Constitution of the State of South Carolina.

3. Defendant's continued refusal to cause or request that a retraction of the Fugitive Friday Facebook post be offered in a manner designed to reach as much of the potential jury pool as possible allows for the unchecked continuation of the unfair tainting of the potential jury pool in this matter, in violation of the Plaintiff's rights to a fair trial before an impartial jury under the Sixth Amendment to the United States Constitution, as well as Article I, Section 14 of the Constitution of the State of South Carolina.

4. Defendant's continued refusal to provide Plaintiff with Defendant's full and complete files on any and all employment activities of former Officer Charlie Dayoub continues to prevent Plaintiff from discovering all of the information necessary to formulate a complete defense with respect to the charges pending against him, thereby constituting a violation of Plaintiff's rights to Equal Protection under the 14th Amendment of the United States Constitution as well as the Plaintiff's 6th Amendment Right to a fair trial before an impartial jury.

## Prayer For Relief

**WHEREFORE,** Plaintiff prays for a judgment against Defendant as follows:

  i. Requiring Defendant to publicly address and retract the Fugitive Friday Facebook Post.

  ii. Requiring Defendant to disclose any and all records relating to the employment and activities of Charlie Dayoub as a law enforcement officer in Greenville

      South Carolina, and/or requiring Defendant to conduct and release the results of a full investigative audit as to Officer Dayoub's involvement in any and all criminal matters while employed as an Officer in Greenville County prior to subjecting Plaintiff to a trial on currently pending charges.

iii. Granting preliminary and permanent injunctive relief to prevent Defendants from making further defamatory remarks.

iv. Granting preliminary and permanent injunctive relief to prevent Defendants from taking other public action with the potential of further tainting the jury pool available to Plaintiff.

v. Granting preliminary and permanent injunctive relief to prevent Defendants from withholding potentially exculpatory evidence or evidence which might call into question the integrity of the States evidence against the Plaintiff in pending criminal matters.

vi. Granting declaratory relief indicating that Plaintiff's ability to obtain a fair trial in Greenville County has been irreparably compromised.

vii. Granting declaratory relief indicating that Plaintiff's ability to receive equal protection under the law is irreparably compromised by Defendant's continued refusal to release any and all records regarding former officer Dayoub's activities while employed as a police officer in Greenville South Carolina.

viii. Such further relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED**,

May 20, 2021 /sAdrianne L. Turner

Adrianne L. Turner
PO Box 210638

Columbia, SC 29221
Fed No.: 11359
(803) 467-8687 (phone)
Aturner@turnerlawsc.com

ATTORNEY FOR PLAINTIFF